IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| CARLA J. LUSTIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:12-CV-22-APR |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration[1], | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on the petition for review of the decision of the Commissioner of Social Security filed by the claimant, Carla Lustig, on April 3, 2012. For the following reasons, the decision of the Commissioner is **REMANDED.**

Background

The plaintiff, Carla Lustig, filed an application for Disability Insurance Benefits alleging a disability onset date of June 26, 2006. (Tr. 125-126) Her application initially was denied and also was denied upon reconsideration. (Tr. 62-77) Lustig requested a hearing, and a hearing was held before Administrative Law Judge Albert Velasquez. Lustig and Vocational Expert Stephanie Archer appeared and testified at the hearing. (Tr. 62-77) After the hearing, the ALJ issued an unfavorable decision. (Tr. 16-20) The Appeals Council denied review, making the

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue as the named Defendant.

1

decision of the ALJ the final one of the Commissioner. (Tr. 1-15, 227-229)

In his opinion, the ALJ first stated that Lustig had not engaged in substantial gainful activity since June 26, 2006, her alleged onset date. (Tr. 20) At step two of the five-step sequential evaluation used to determine whether a claimant has a disability, the ALJ found that Lustig had the following severe impairments: degenerative disc disease and osteoarthritis. (Tr. 20) The ALJ determined that Lustig's impairments did not meet or medically equal a listed impairment at step three. (Tr. 20)

The ALJ next found that Lustig had the residual functional capacity (RFC) to perform less than a full range of light work. (Tr. 22) The ALJ determined that Lustig could lift and carry no more than twenty pounds occasionally and ten pounds frequently. She could stand and walk for six out of eight hours and sit for six of eight hours; could not climb ropes, ladders, or scaffolds; could have no more than occasional climbing of ramps and stairs; could not crawl or kneel; and could reach in all directions, including overhead, occasionally. (Tr. 22) Lustig also was to avoid work at unprotected heights and around dangerous moving machinery, and she could not operate a motor vehicle or work around open bodies of water or flames. (Tr. 22)

In reaching his RFC determination, the ALJ first summarized Lustig's testimony at the hearing. (Tr. 23) Lustig reported that she did not sleep well and had to use a heating pad and ice throughout the night. (Tr. 23) She did housework, laundry, and washed dishes, but her husband helped with vacuuming and taking out the trash. (Tr. 23) She estimated that she could lift a gallon jug, sit for five to ten minutes, stand for half an hour to an hour, and walk a couple blocks. (Tr. 23) She also reported that her medication made her dizzy. (Tr. 23)

The ALJ then summarized Lustig's medical treatment. (Tr. 23-24) A June 19, 2006 MRI

of the left shoulder revealed mild degenerative changes of the acromioclavicular joint, an abnormal appearance of the rotator cuff tendon, and a small glenohumeral joint effusion. (Tr. 23) Lustig saw Dr. Thomas Gleason on October 9, 2007, who recommended a home exercise program. (Tr. 23) Because her condition did not improve, Lustig saw Dr. James Hill on February 25, 2009. Dr. Hill recommended surgery and opined that Lustig was permanently disabled. (Tr. 23) The ALJ stated that he gave this opinion little weight because it was a decision reserved for the Commissioner. (Tr. 23)

Lustig returned to Dr. Hill after her surgery, complaining of pain in her left shoulder. (Tr. 23) She had a full range of motion in her shoulder and weakness on abduction and external rotation with pain on resistance of her supraspinatus. (Tr. 23) She returned in April, complaining of pain in her right shoulder. An MRI revealed a full-thickness tear of her supraspinatus and subluxation bicep tendon. (Tr. 23)

Lustig first experienced back pain in August 2005, and she suffered a further injury to her back at work in June 2006. (Tr. 23) An MRI of her lumbar spine revealed bulging discs at L4-L5 and L3-L4 with L3-L4 spondylolisthesis and associated degeneration. (Tr. 23) She reported pain in her neck and shoulder in January 2008 to Dr. Michael Zindrick, but at this time her lower back was doing well. (Tr. 24) Upon examination, she could flex to 60 degrees, extend to 20 degrees, and side bend to 20 degrees bilaterally. (Tr. 24) She had negative sitting straight leg raises and good neurovascular function in her lower extremities. (Tr. 24) She had a full range of motion in her neck with pain on extremes of flexion. (Tr. 24) She had normal upper extremity motor and sensory reflexes on direct testing. (Tr. 24)

On February 11, 2008, Lustig's primary complaint was pain in her left shoulder, which

3

she reported was typically a 0 to 3 on a 10 point pain scale, but sometimes went up to a 6. (Tr. 24) Upon examination, she could toe and heel walk and had negative straight leg raises. (Tr. 24) Her lower extremity motor and sensory examination was normal. (Tr. 24) Dr. Zindrick released her to work on a light-medium work level. (Tr. 24)

Lustig returned to Dr. Zindrick with complaints of pain in her right hip and leg on September 16, 2008. (Tr. 24) She was given a cortisone injection. (Tr. 24) On October 7, 2008, she could toe-walk and heel-walk. However, she had a negative sitting straight leg raise, pain with flexion beyond 45 degrees, extension beyond 10 degrees, and side bending beyond 20 degrees bilaterally. (Tr. 24) At this time, Dr. Zindrick noted that Lustig was permanently disabled. (Tr. 24) The ALJ again explained that this was a decision left for the Commissioner and that he gave this opinion little weight. (Tr. 24)

The ALJ then summarized the consultative medical examination performed on December 11, 2008, by Dr. Kanayo Odeluga. (Tr. 24) At this examination, Lustig reported that her pain had progressively worsened since her spinal fusion in 2007. (Tr. 24) Dr. Odeluga noted that Lustig had negative straight leg raises on both lower extremities and full strength in all major muscle groups. (Tr. 24) She had no difficulty getting on and off the examination table, tandem walking, walking on her heels or toes, squatting, or hopping. (Tr. 24) Dr. Odeluga diagnosed Lustig with chronic low back pain, lumbar disc disease, status post fusion, and chronic left shoulder pain. (Tr. 24)

The ALJ next explained that he did not find Lustig's testimony credible. (Tr. 24) He devoted a paragraph of his opinion to this, which states in its entirety:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to

4

cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The undersigned affirms that although the claimant did have problems with lower back, hip, and shoulder pain, that occasionally interfered with her activities of daily living, it was not of the severity that would meet or equal a disability finding. (Tr. 24)

At step four the ALJ determined that Lustig could not engage in her past relevant work, and at step five the ALJ found that there were jobs that existed in significant numbers in the national economy which Lustig could perform, including packer, assembler, and machine tender. (Tr. 25-26)

## Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Kastner v. Astrue***, 697 F.3d 642, 646 (7th Cir. 2012); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852, (1972)(*quoting* ***Consolidated Edison Company v. NRLB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* ***Shideler v. Astrue,*** 688 F.3d 306, 310 (7th Cir. 2012)***; Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir. 2013)***; Rice v. Barnhart***, 384 F.3d 363, 368-369 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d

5

589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> **42 U.S.C. § 423(d)(1)(A)**.

The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520.** The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 404.1520(b).** If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e).** However, if the claimant shows that her impairment is so severe that she is unable to engage in

her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).**

Lustig's sole argument is that the ALJ erred in assessing and explaining his credibility determination. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimaint's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in

7

the record."); ***Scheck v. Barnhart***, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529**( c); ***Schmidt v. Barnhart***, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.")

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also* ***Indoranto v. Barnhart***, 374 F.3d 470, 474 (7th Cir. 2004); ***Carradine v. Barnhart***, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see also* **Zurawski v. Halter**, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. *See* **Zurawski**, 245 F.3d at 887; **Diaz v. Chater**, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must "build an accurate and logical bridge from the evidence to [his] conclusion." **Zurawski**, 245 F.3d at 887 (*quoting* **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting. *See* **Zurawski**, 245 F.3d at 888 (*quoting* **Bauzo v. Bowen**, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

The paragraph the ALJ devoted to his conclusion that Lustig was not credible to the extent her symptoms were not consistent with the RFC did not provide any additional detail. The ALJ cannot rely on this type of boilerplate language without further discussion. The Commissioner argues that the ALJ provided further reasons, however, the court is not convinced.

9

Prior to stating that Lustig was not credible, the ALJ engaged in a discussion of her medical history, pointing to inconsistencies between the complaints of pain she made to her doctors and her examination results. Specifically, the ALJ explained that Lustig complained to Dr. Hill of pain in her left shoulder, yet she had a full range of motion. In January 2008, Lustig complained of pain in her neck and shoulders, but could flex to 60 degrees, extend to 20 degrees, and side bend to 20 degrees bilaterally. She had a full range of motion in her neck with pain on extremes of flexion, normal upper extremity motor and sensory reflex tests, and could toe walk and heel walk. Later examinations revealed similar capabilities. In 2008, Lustig described pain that had worsened since her spinal fusion in 2007, but upon examination she had negative straight leg raises and full strength in all major muscle groups. She did not have any difficulty getting on and off the examination table, tandem walking, walking on toes or heels, squatting, or hopping. Although the ALJ pointed to inconsistencies between Lustig's reports of pain to her doctors and her examination results, the ALJ provided no discussion on how these results were inconsistent with her testimony at the hearing and her reported limitations in daily activities. The ALJ has not made any attempt to "build a logical bridge" between this medical evidence and Lustig's testimony, and he has not clearly identified even one inconsistency between Lustig's testimony and her medical notes. It would be speculative to guess the basis of the ALJ's credibility determination. This is the type of boilerplate credibility language that the Seventh Circuit has warned against.

The Commissioner also points out that the ALJ acknowledged Lustig's testimony and provided some accommodations on account of her testimony. However, this does not make up for the absence of the reasons for the ALJ's credibility determination. Although the

court will not overturn an ALJ's credibility decision unless it was patently wrong, without as much as a single sentence to explain his decision, the court cannot discern the basis of the ALJ's decision and is left with nothing to review. For this reason, the decision of the Commissioner is **REMANDED**.

    ENTERED this 2nd day of August, 2013

                                                /s/ Andrew P. Rodovich
                                                United States Magistrate Judge